# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

*UNITED STATES OF AMERICA*

*V.*

*TAYLOR NARDO PAYA*

**ELECTRONIC CRIMINAL COMPLAINT**
**(Redacted)**
**CASE NUMBER:** 26-4256 MJ CDB

I, the undersigned, state under oath that the following is true and correct to the best of my knowledge and belief:

**COUNT 1**

**On or about August 12, 2026, in the District of Arizona, within the confines of the Havasupai Indian Reservation, Indian Country, the defendant, TAYLOR NARDO PAYA, an Indian, did knowingly and intentionally assault A.P.R. with a dangerous weapon, that is a knife, with the intent to do bodily harm, in violation of Title 18, United States Code, Sections 113(a)(3) and 1153.**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

REVIEWED BY: */s AUSA Paul V. Stearns*

_X_ Pursuant to 28 U.S.C. §1746(2), I declare that the foregoing is true and correct.

Whitley Mumm, Special Agent, FBI
Complainant's Name and Title

August 13, 2026
Complainant's Signature Date

_X_ Sworn by Telephone

Date/Time

Flagstaff, Arizona
City and State

Camille D. Bibles
Digitally signed by Camille D. Bibles
Date: 2026.08.13 20:07:15 -07'00'

Camille D. Bibles, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

**CC: USM & PTS**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY SUBMITTED AFFIDAVIT

I, FBI Special Agent Whitley A. Mumm, state under oath as follows:

1. I am employed as a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") and have been so employed since August 2023. I am currently temporarily assigned to the FBI Phoenix Division, Lake Havasu City Resident Agency. My primary duties at the FBI include the investigation of violent crimes occurring within Indian Country and similar crimes in the District of Arizona, to include the Havasupai Indian Reservation. I am permanently assigned to the FBI Dallas Division, wherein I investigate crimes against children and human trafficking. I am a licensed attorney in Maryland and Texas and practiced law approximately four years before joining the FBI.

2. The information contained in this affidavit is based upon my personal knowledge, training, and experience, as well as information provided to me by other law enforcement officers and/or witnesses including those listed herein. Because this affidavit is made to establish probable cause, I have not listed every fact known regarding this investigation.

## Introduction

3. This case involves an assault that occurred on A.P.R., a 27-year-old non-Indian female. The assault took place on the morning of August 12, 2026, in

Supai, Arizona, which is on the Havasupai Indian Reservation in the District of Arizona. The assault was committed by Taylor Nardo Paya (Paya), a 29-year-old Indian male, in violation of 18 U.S.C. §§ 113(a)(3) and 1153, Assault with a Dangerous Weapon in Indian Country. In short, Paya used a knife to cut A.P.R.'s neck and hand. A.P.R. dropped her cell phone. Paya grabbed the phone and fled the area on foot.

4. Based on my training and experience, I know that the Havasupai Indian Tribe is a federally recognized Indian Tribe. Paya is a Native American Indian. He is a member of the Havasupai Indian Tribe and resides in Supai, Arizona on the Havasupai Indian Reservation.

**<u>Investigation/Probable Cause</u>**

5. The following information was derived from Bureau of Indian Affairs Police Officer Charles Etheredge's report. Officer Etheredge was the only law enforcement officer in Supai, Arizona, on the day of the attack.

6. On August 12, 2026, at approximately 11:55 AM, Officer Etheredge responded to a report of an aggravated assault and theft in the vicinity of C.W.'s residence, in Supai, Arizona, within the boundaries of the Havasupai Indian Reservation. The reporting party/victim, later identified as A.P.R., appeared to be scared and feared for her safety. She told Officer Etheredge that her cell phone had been stolen and that she sustained a possible major neck injury caused by a male subject. Officer Etheredge calmed A.P.R. and obtained her identifying information,

including her name and date of birth. Officer Etheredge observed that A.P.R. had blood on her clothes and neck. She also appeared to have an injury to her left hand/wrist area. A.P.R. was shaking physically and verbally. A.P.R. expressed concern for a traveling companion who was walking ahead of her toward the hills and near a fence line. A.P.R. described her attacker as having long hair and wearing all-black clothing.

7. A Supai resident identified as A.W., who was at C.W.'s residence, aided Officer Etheredge by confirming injuries to A.P.R.'s left hand/wrist and offering situational details from the immediate area. Officer Etheredge requested that any video evidence captured by witnesses be sent to his official email, and he directed medical staff to prepare for A.P.R.'s arrival for evaluation of a right-side neck wound. A.P.R. was then transported to clinic in Supai for treatment.

8. A.W. identified Taylor Nardo Paya (Paya) as the individual who attacked A.P.R. A.W. recognized Paya as a fellow local resident of Supai and provided his name to law enforcement.

9. A.W. told Officer Etheredge they were taking a break from work when they noticed a female approaching their gate looking at their lemonade advertisement sign. A.W. then saw Paya appear around the corner and walk behind the female. The female turned to speak with Paya. When inside their business, A.W. heard a loud thud and scream. A.W. checked their Ring camera footage and observed a commotion wherein Paya was holding what appeared to be a pocketknife. Paya

fled through A.W.'s yard and into a neighbor's yard. A.W. then brought A.P.R. into the building, locked the door, and provided first aid.

10. Officer Etheredge received directions from currently unknown tribal members and other persons within the Havasupai Indian Reservation as to Paya's possible location. In addition, A.P.R. searched for her stolen phone via "Find My iPhone," and she showed Officer Etheredge the results. The results indicated the phone was located at a nearby residence in Supai. Officer Etheredge arrived at this residence with currently unknown tribal members; however, he advised the tribal members he could not enter the residence without a search warrant or observing Paya inside.

11. Officer Etheredge and currently unknown tribal members observed shoe prints leaving the aforementioned residence and attempted to follow the prints. They were unable to do so due to rain. Thus, Officer Etheredge was unable to locate Paya at that time. However, he received additional information that Paya might be at two other residences, including his mother, Tammy Grounds's residence. Officer Etheredge left the search for Paya to interview and check on A.P.R., as she was due to leave Supai shortly.

12. Officer Etheredge conducted a follow-up interview with A.P.R. at the Havasupai Indian Health Service Station. The interview began with a review of A.P.R.'s injuries. Medical staff were present and starting to stitch a wound on the

right side of A.P.R.'s neck, which Officer Etheredge estimated to be approximately five to six centimeters in length.

13. A.P.R. told Officer Etheredge that she was attacked while walking along the main trail near the village. Her assailant followed closely, making A.P.R. uncomfortable. A.P.R. made attempts to distance herself and called out for her friend. The attacker approached unnoticed and attempted to slash A.P.R.'s neck. A.P.R. dropped to the ground in self-defense, recalling thoughts of her children and fearing for her life.

14. The attacker did not make verbal demands, and A.P.R. emphasized the seriousness of her assault, noting that targeting the neck is often an attempt to kill. A.P.R. repeatedly expressed a strong desire to return home to their family.

15. A.P.R. described distinctive tattoos on her attacker's neck, and she stated that her boyfriend captured a video screenshot of the attacker's face during the incident. A.P.R. offered to provide this video to law enforcement once her phone was charged.

16. After the interview, and on the same date, Officer Etheredge responded to Paya's mother's residence. Officer Etheredge knocked on the front door; no one answered.[1] Officer Etheredge went to the rear porch and observed fresh, wet, dirty socks on the wooden railing. Officer Etheredge knocked on the rear door

[1] According to Officer Etheredge, Paya is known to live with his mother in Supai, Arizona.

approximately three times. Paya opened the door approximately four inches but slammed it before Officer Etheredge could stop him. Due to officer and public safety concerns, Officer Etheredge did not enter the residence to arrest Paya. At the time of this writing, Officer Etheredge is the only law enforcement officer in Supai.

17. I reviewed photographs taken of A.P.R.'s injuries taken by Officer Etheredge. The photos show a laceration across the right side of A.P.R.'s neck, appearing approximately nine centimeters in length. Photographs also show a bandage on A.P.R.'s left hand and blood on her clothing.

18. I conducted a review of a Ring camera recording obtained by Officer Etheredge from A.W. In the bottom right corner of the video the date is recorded as 08/12/2026 and the time is 11:49 a.m. On the left side of the frame, a man wearing a black tee-shirt and plaid shorts stands over a A.P.R., who is on her knees. The man appears to have a knife in his right hand. The knife moves toward A.P.R.'s head, neck, and back. The man is holding A.P.R.'s hair with his other hand. A.P.R wails. She continues to scream and shouts, "No." A.P.R. pushes the man back and fights to her feet. The man pulls A.P.R. down and continues to assault her. A.P.R. screams "no" approximately seven more times. A woman comes out of the residence holding a cell phone and runs back into the house. The man runs off. A.P.R. screams, "Oh my God!" A.P.R. runs to the front of the house and motions at her neck. She screams "please, please, please!" The woman tells A.P.R. to come into her house.

19. Later the same day, A.P.R. was interviewed by FBI SA Kenneth Wilkerson. A.P.R. told Agent Wilkerson that while walking she observed a man ahead of her. She asked him if the gift shop was ahead. The man was Native American with tan skin, approximately five feet, seven inches in height with an average body build. The man wore a black shirt and long blue denim shorts or pants. A.P.R. said that the man had distinctive tattoos on his face and neck. He had a stylized font tattoo on his left cheek above his jaw line and two large, amateur looking teardrop-shaped tattoos beneath his left eye. He also had tattoos across his neck. She had never seen him before.

20. After A.P.R. asked the man to confirm the shop's direction, he gestured toward the building in front of them but said nothing. The man's demeanor made A.P.R. uneasy, so she said nothing further and proceeded directly toward the gift shop. As she turned toward the path that led to the gift shop, A.P.R. noticed that the man was now walking behind her. She asked him again to confirm that the building in front of her was the gift shop. The man gestured toward the building. A.P.R. had since lost sight of her hiking companion, and there was no one else in sight. Feeling increasingly uneasy, A.P.R. placed a FaceTime call to her boyfriend. A.P.R. spoke with her boyfriend as she continued toward the gift shop.

21. Before A.P.R. reached the walkway to the front door, she felt a sharp slashing sensation against the right side of her neck. A.P.R. stumbled to the ground and turned. When she did, A.P.R. saw the same man she just encountered standing

over her. A.P.R said the man held in one of his hands a small dull-looking knife or blade with a red handle. During the attack, some of A.P.R.'s belongings fell out of her backpacks, including her cell phone. The man grabbed A.P.R.'s cell phone from the ground and ran toward the back side of the gift shop.

22. A woman emerged from the front door of the gift shop and motioned for A.P.R. to come inside. The woman locked all the shop's doors and helped A.P.R. by providing basic first aid for wounds and calling emergency services.

23. On August 13, 2026, I conducted a review of Paya's criminal history report, which included his Arizona driver's license photograph taken on June 19, 2026. Paya has multiple tattoos on his face and neck. He has two diamond shape symbols on his upper left cheek, cursive script on his left jaw and above his eyebrows, and a large tattoo on his neck. Paya's tattoos are consistent with A.P.R.'s description of the tattoos on the face of the man who assaulted her.

**Conclusion**

24. Based upon the information set forth above, it is submitted that there is probable cause to believe that Taylor Paya violated federal law by assaulting A.P.R. in violation of 18 U.S.C. §§ 113(a)(3) and 1153.

25. An arrest warrant is respectfully requested for Taylor Nardo Paya.

**Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.**

Executed on: August 13, 2026

Whitley A. Mumm, Special Agent, FBI

X Sworn by Telephone

Camille D. Bibles Digitally signed by Camille D. Bibles
Date: 2026.08.13 20:06:28 -07'00'

Camille D. Bibles Date/Time
United States Magistrate Judge